UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                                          Case Number: 10-11787-7

    CHAD L. PAWLAK and
    JO ANN PAWLAK,

                      Debtors.

---

    ORGANIC FAMILY, LLC, ROLF KLEFSTAD,
    ROGER KLEFSTAD, GREGORY HETRICK,
    SAMUEL DANZINGER, and STEVEN PECHACEK,

                      Plaintiffs,
v.                                                                                              Adversary Number: 10-148

    CHAD L. PAWLAK and JO ANN PAWLAK,

                      Defendants.

---

## MEMORANDUM DECISION

On December 22, 2011, the Court conducted a hearing on (i) the defendants' motion for summary judgment, and (ii) the plaintiffs' motion for partial summary judgment. The plaintiffs were represented by Attorneys Tanya M. Bruder and Donald R. Marjala, and the defendants were represented by Attorney Erik H. Monson. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the Court has jurisdiction under 28 U.S.C. § 1334. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

The plaintiffs wish to preclude discharge of a $1.1 million judgment entered against Mr. Pawlak in state court. By order dated June 3, 2011, this Court

previously dismissed a portion of the plaintiffs' second amended complaint.[1] The pending motions involve the remaining causes of action, which arise under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). In their motion, the plaintiffs contend that the state court judgment should be given preclusive effect as to the amount of the debt. The defendants argue that the critical issues were not actually litigated in the state court and the plaintiffs have not demonstrated that they suffered any actual damages.

As a preliminary matter, the plaintiffs have agreed to the dismissal of their claims against Mrs. Pawlak. All that is left is to determine whether Mr. Pawlak obtained something from the plaintiffs through fraud or false pretenses, or whether he engaged in fraud or defalcation while acting in a fiduciary capacity. The essential facts are these. The plaintiffs are an organic dairy and its individual members. Organic Choice Cooperative was originally founded in 2002 by the other plaintiffs.[2] Mr. Pawlak was hired to serve as Organic Choice's general manager and was responsible for acquiring milk from organic dairy farmers for resale by the cooperative. His employment agreement had an original term of 12 months.[3]

---

[1] The plaintiffs had alleged that the debtor's activities in connection with a malpractice settlement with his former attorney constituted some sort of fraud. The Court concluded that the plaintiffs' allegations did not state a cause of action under either 11 U.S.C. § 727(a)(4)(C) or § 523(a)(2)(A).

[2] Defendant's Proposed Findings of Fact ¶1; Plaintiffs' Response to Defendant's Proposed Findings of Fact ¶1. Organic Choice Cooperative was subsequently dissolved after the formation of Organic Choice, LLC. The assets of Organic Choice, LLC, were then transferred to Organic Family, LLC, in 2004.

[3] The original employment contract was signed in August of 2002. Defendant's Proposed Findings of Fact ¶¶ 4-6; Plaintiffs' Response ¶¶ 4-6.

Shortly after his employment, Mr. Pawlak negotiated an agreement with Horizon Organic Dairy for the sale of the cooperative's milk.[4] Soon after Horizon executed a long-term agreement at the end of 2002, the cooperative was reorganized and converted into a limited liability company. Blue Moon Capital, LLC, an entity owned by Mr. Pawlak, became a member of the successor company, Organic Choice LLC.[5] Mr. Pawlak's agreement with the cooperative was assigned to the LLC. This made him both an owner and an employee of Organic Choice.

In the spring of 2003, Mr. Pawlak contacted James Greenberg, a milk producer who was in the process of becoming certified to sell organic milk. Mr. Greenberg indicated that he would be interested in selling his milk through Organic Choice.[6] Mr. Pawlak informed the other owners of his negotiations and told them

---

[4] Under the agreement, Horizon agreed to purchase one "load" of approximately 50,000 pounds of milk per day from Organic Choice through the remainder of 2002. Defendant's Proposed Findings of Fact ¶ 11; Plaintiffs' Response ¶ 11. A long-term purchase agreement was executed between Organic Choice and Horizon in December of 2002. Defendant's Proposed Findings of Fact ¶¶ 12-13; Plaintiffs' Response ¶¶ 12-13.

[5] There is a factual dispute as to why the cooperative was reorganized. Mr. Pawlak contends that it was converted into a limited liability company in order to accommodate the Horizon contract (which may have required a significant increase in milk production). Defendant's Proposed Findings of Fact ¶ 16. The plaintiffs claim that the formation of a limited liability company was done solely in response to Mr. Pawlak's request that he be brought into the business as an owner. Plaintiffs' Response ¶ 16. This dispute is not material to the outcome.

[6] As with other issues, the parties dispute the details of the Greenberg negotiations. Mr. Pawlak contends that Organic Choice would not have signed a marketing agreement with Mr. Greenberg because his farm had not yet been certified organic. Defendant's Proposed Findings of Fact ¶¶ 48-50. The plaintiffs argue that "industry practice" is to sign producers before certification is complete to secure their production, and that Organic Choice signed a number of producers prior to completion of certification. Plaintiffs' Response ¶ 50. Again, however, these facts are not material to the outcome.

3

that Mr. Greenberg's milk would not be certified until October of 2003.[7] During the time he was negotiating with Mr. Greenberg, the other members of Organic Choice grew dissatisfied with Mr. Pawlak and decided to terminate his relationship with the company.[8] After he learned that his employment agreement would not be renewed, Mr. Pawlak formed a competing company, Organic Farm Marketing, LLC.[9] He also entered into a marketing agreement with Mr. Greenberg.

Mr. Pawlak also filed two lawsuits after his termination. In the first suit, he alleged that the plaintiffs had breached the employment contract by failing to give him 60 days' notice of his termination. That case was soon settled. The second suit alleged that the other members of the LLC had breached their fiduciary duties by prohibiting him from participating in the company and excluding him from various meetings.[10] After the second suit was filed, the other members went even further. They formed Organic Family, the entity which is a named plaintiff in this case. They

---

[7] Defendant's Proposed Findings of Fact ¶¶ 45-47; Plaintiffs' Response ¶¶ 45-47. Although the plaintiffs dispute Mr. Pawlak's characterization of his interaction with Mr. Greenberg, they acknowledge that he sent them an e-mail about Mr. Greenberg in July 2003 and that he told them Mr. Greenberg's milk could not be certified as organic until the following October.

[8] The parties debate precisely why the relationship deteriorated - namely, whether the other members decided Mr. Pawlak was making too much money, or whether he was asking for too much *more*. Defendant's Proposed Findings of Fact ¶ 53; Plaintiffs' Response ¶ 53. For purposes of this decision, it is sufficient to simply recognize that it ended badly.

[9] Mr. Pawlak's new entity was formed on August 5, 2003. Defendant's Proposed Findings of Fact ¶ 62.

[10] Here again, there is a difference of opinion as to how the process unfolded. What is clear is that Mr. Pawlak was no longer welcome within Organic Choice, and the other members sought to remove him from membership, ultimately creating their own new entity without him.

4

sold the assets of Organic Choice to Organic Family in November of 2004 and sent Mr. Pawlak a check for $50,000.00, ostensibly representing his portion of the sales price. Upon the advice of counsel, he deposited the check even though he continued to object to the sale.[11] Meanwhile, the other members filed counterclaims in the second state court lawsuit claiming that it was actually *Mr. Pawlak* who was guilty of breaching fiduciary duties - namely, the ones he owed to Organic Choice as its general manager. Unfortunately for Mr. Pawlak, the counterclaims were not answered in a timely fashion. The state court entered a default judgment against Mr. Pawlak even as his own claims regarding the sale were dismissed on the grounds that his deposit of the check constituted an accord and satisfaction.[12]

The state court conducted a daylong trial as to damages on the counterclaims and entered an award of damages of approximately $1.1 million. The calculation was based on Mr. Greenberg's testimony. He stated that before he signed a marketing agreement with Organic Farm Marketing (Mr. Pawlak's new entity), he executed a marketing agreement with Organic Choice itself.[13] Mr. Pawlak supposedly concealed this agreement because he knew his relationship

---

[11] In fact, his attorney filed an amended complaint in the second lawsuit seeking to invalidate the sale or obtain an accounting and fair distribution of Blue Moon's interest in Organic Choice. Defendant's Proposed Findings of Fact ¶ 111.

[12] Defendant's Proposed Findings of Fact ¶ 122.

[13] Defendant's Proposed Findings of Fact ¶ 127; Plaintiffs' Response ¶ 127.

with Organic Choice was about to end.[14] While Mr. Greenberg did ultimately receive his organic certification, he never sold his milk to either Organic Farm Marketing *or* Organic Choice. Instead, he negotiated directly with Horizon itself.[15]

As a result, Mr. Pawlak did not actually receive an economic benefit from concealing the original contract or pursing his own arrangement with Mr. Greenberg. However, it appears that the state court damage award is based upon the likely revenue from the original contract. Mr. Pawlak contends that to the extent such a contract existed, it was "illusory" in that any performance by Mr. Greenberg was tied not to the contract but to his personal choice about whether to finalize the organic certification process. This argument strikes at the question of liability (which was the result of a default judgment) rather than the value of any lost revenues (the subject of the actual trial). The question is whether Mr. Pawlak may revisit that issue now.

Summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to summary judgment as a matter of law. See Fed. R. Bankr. P. 7056, incorporating Fed. R. Civ. P. 56(c). Summary judgment is to be denied only if there is a "genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A material fact is one related to a disputed matter that might affect the outcome of the action. Id. When

---

[14] Defendant's Proposed Findings of Fact ¶ 129; Plaintiffs' Response ¶ 129.

[15] Mr. Pawlak believes this was because Horizon offered a volume premium. Defendant's Proposed Findings of Fact ¶ 136. The plaintiffs dispute this characterization. Plaintiffs' Proposed Findings of Fact ¶¶ 136-137. Regardless, neither company received any milk from Mr. Greenberg.

deciding whether there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in favor of that party. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003); see also Schuster v. Lucent Techs., Inc., 327 F.3d 569 (7th Cir. 2003). The Court's role is not to resolve factual issues, but to grant summary judgment if there can be "but one reasonable conclusion." Liberty Lobby, 477 U.S. at 250.

This is an action challenging the debtor's right to discharge a debt. Principles of bankruptcy jurisprudence dictate that exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor. See In re Chambers, 348 F.3d 650, 654 (7th Cir. 2003); In re Scarlata, 979 F.2d 521, 524 (7th Cir. 1992). A plaintiff must prove all elements of the proffered exception to discharge by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287-88, 111 S. Ct. 654, 659-60, 112 L. Ed. 2d 755 (1991). The plaintiffs claim the debt is nondischargeable under either 11 U.S.C. § 523(a)(2)(A) or 523(a)(4). The first section excepts debts to the extent obtained by "false pretenses, a false representation, or actual fraud." The second excepts debts "for fraud or defalcation in a fiduciary capacity, embezzlement, or larceny."

In order to except a debt from discharge under § 523(a)(2)(A), a creditor is typically required to establish the following elements: (i) the debtor made a false representation of fact, (ii) the debtor either knew the representation was false or made the representation with reckless disregard for its truth, (iii) the representation was made with an intent to deceive, and (iv) the plaintiff justifiably relied upon the false representation. See In re Kimzey, 761 F.2d 421, 423-24 (7th Cir. 1985),

7

abrogated on other grounds by Grogan v. Garner, 111 S. Ct. 654 (1991); Vozella v. Basel-Johnson (In re Basel-Johnson), 366 B.R. 831 (Bankr. N.D. Ill. 2007). In McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000), the court noted that "actual fraud" in the context of the statute is broader than, and need not take the form of, a specific misrepresentation if there is evidence of a fraudulent scheme by which the debtor sought to take advantage of another person. As the court stated:

> No learned inquiry into the history of fraud is necessary to establish that it is not limited to misrepresentations and misleading omissions. "Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."

Id. (citing Stapleton v. Holt, 1952 OK 408, 207 Okla. 443, 250 P.2d 451, 453-54 (1952)). The point of the statute is to preclude dishonest debtors from injuring someone by their fraudulent conduct and then using the bankruptcy system to evade liability.

The plaintiffs contend that the state court judgment is entitled to preclusive effect. As a matter of full faith and credit, a federal court must apply the forum state's law of issue preclusion in determining the preclusive effect of a state court judgment. Bell v. Mathe (In re Mathe), 2011 WL 4006636, at *2 (Bankr. E.D. Wis. Sept. 9, 2011). In Wisconsin, this determination is ultimately based upon principles of "fundamental fairness." See Paige K.B. v. Steven G.B., 226 Wis. 2d 210, 225, 594 N.W.2d 370 (Wis. 1999). One question is whether the individual circumstances of the prior case reflect an "inadequate opportunity or incentive to obtain a full and fair

adjudication in the initial action." Mathe, 2011 WL 4006636, at *2 (citing Michelle T. v. Crozier, 173 Wis. 2d 681, 689, 495 N.W.2d 327 (Wis. 1993)). In addition, the preclusive effect of a default judgment is limited to those matters actually litigated (or decided) in the prior matter. Menard, Inc. v. Liteway Lighting Prods., 2005 WI 98, 282 Wis. 2d 582, 614, 698 N.W.2d 738 (2005).

Here, it is admitted that there was no trial as to liability. The judgment was entered because Mr. Pawlak's former attorney missed a deadline to respond to the counterclaims.[16] In addition, the May 22, 2007, judgment which was entered after the trial on damages referenced two claims. The first cause of action was for a violation of Wis. Stat. § 183.0402(1), under which the plaintiffs alleged that Mr. Pawlak had not dealt fairly with the other members of Organic Choice. The court concluded that Mr. Pawlak had violated the statute by engaging in transactions from which he "derived an improper personal benefit" and that he engaged in "willful misconduct" which was detrimental to Organic Choice.[17] The court also awarded damages on the second cause of action for breach of fiduciary duty, finding that Mr. Pawlak breached his fiduciary duties (as both the manager of Organic Choice and the controlling member of Blue Moon, his ownership entity) by taking actions which were "contrary to the business health and viability" of Organic Choice.[18]

---

[16] As the state court noted in its June 23, 2006, Decision on Motions, "By virtue of not responding, plaintiffs have been deemed to have admitted the allegations of the counterclaim." Slip op. at 5 (attached to the plaintiffs' original complaint as Exhibit B).

[17] May 22, 2007, Judgment at 1.

[18] Id.

9

In terms of preclusive effect, it seems clear that the state court judgment conclusively establishes the amount of the plaintiffs' claim. However, any judgment obtained in state court must still satisfy the statutory requirements of § 523(a) before it will be excepted from discharge. The judgment is preclusive only as to the issues it actually determined, and even then only to the extent dictated by principles of "fundamental fairness." <u>Paige K.B.</u>, 226 Wis. 2d at 225. The judgment does not speak directly to the elements of fraud under § 523(a)(2)(A). Instead, the judgment indicates that Mr. Pawlak violated Wis. Stat. § 183.0402(1), which provides as follows:

> (1) No member or manager shall act or fail to act in a manner that constitutes any of the following:
>
> (a) A wilful failure to deal fairly with the limited liability company or its members in connection with a matter in which the member or manager has a material conflict of interest.
>
> (b) A violation of criminal law, unless the member or manager had reasonable cause to believe that the person's conduct was lawful or no reasonable cause to believe that the conduct was unlawful.
>
> (c) A transaction from which the member or manager derived an improper personal profit.
>
> (d) Wilful misconduct.

There is no indication that a violation of this statute *required* proof of an intent to deceive, a misrepresentation or other "trick," or any of the other elements of

§ 523(a)(2).[19] As such, the Court must make an independent review to determine whether the plaintiffs' claims satisfy the code.

Mr. Pawlak argues that the plaintiffs' claims under § 523(a)(2)(A) must be dismissed because they cannot demonstrate that he obtained anything of value through a false representation or actual fraud. He submits that either he must have obtained an actual benefit or the creditor must have sustained an actual loss as a direct result of his fraudulent conduct. For purposes of summary judgment, Mr. Pawlak assumes that the plaintiffs can prove that he secured a marketing agreement with Mr. Greenberg and concealed it from the plaintiffs as the conflict between them escalated. Since the only harm alleged by the plaintiffs related to the Greenberg contract, Mr. Pawlak contends that even if their allegations are accepted as true, there was no actual damage. The reason for this is that he believes the Greenberg contract was based upon an illusory promise and was therefore unenforceable. He also contends that they cannot demonstrate that their reliance was justifiable.

As to the question of reliance, it is clear that Mr. Pawlak informed the other members of Organic Choice about his discussions with Mr. Greenberg and that he gave them a timetable for Mr. Greenberg's organic certification. His e-mail to the other members was sent on July 18, 2003. According to the plaintiffs, in the e-mail he told

---

[19] At the same time, the Court is cognizant of the Seventh Circuit's admonishment in McClellan that "actual fraud" under the code is broader than misrepresentation, and that "[b]reaches of fiduciary obligation are commonly punished as frauds even when there is no misrepresentation or misleading omission." 217 F.3d at 893 (citation omitted). Depending upon the facts, a violation of Wis. Stat. § 183.0402(1) *might* conceivably constitute actual fraud. This simply illustrates the fact that the Court must consider whether the plaintiffs' claims under § 523(a)(2)(A) are sufficient to withstand Mr. Pawlak's motion for summary judgment.

11

them that he had a "paperwork meeting" set for the following Thursday at Mr. Greenberg's farm, and that "we should get him signed sooner vs. later."[20] Within a month of this e-mail, Mr. Pawlak was at odds with the other managers over his salary and had been informed about the likely termination of his employment. The other managers acted swiftly to remove Mr. Pawlak from the operations of Organic Choice and yet apparently did not follow-up with Mr. Greenberg about the "paperwork meeting" or the signing of any contracts. Even presuming that Mr. Pawlak concealed the existence of a signed agreement, it is unclear how the plaintiffs could justifiably rely upon his alleged omissions. Not only had they been informed about Mr. Greenberg, but they knew that a "paperwork meeting" was supposed to have taken place. There are no allegations that they made inquiries about the Greenberg contract or that they pursued the matter until much later; there is also no indication that Mr. Pawlak lied to them. Instead, they contend that he "concealed" the agreement from them.

Presuming this is true (an obligatory presumption at this stage of the proceedings), this may mean that Mr. Pawlak did not deal fairly with the company. Likewise, his execution of his own agreement with Mr. Greenberg may constitute a transaction from which he "derived an improper personal benefit," and he may have engaged in "willful misconduct" which was detrimental to the company. Such conclusions justify the findings made by the state court under Wis. Stat. § 183.0402(1), but § 523(a)(2)(A) requires something more. It requires evidence of a scheme or trick which *deceives* the plaintiffs; it requires proof that they were fooled, and that Mr. Pawlak

---

[20] Plaintiffs' Response ¶ 45.

gained an advantage over them by false suggestions or suppression of the truth. McClellan, 217 F.3d at 893. And they must be able to demonstrate that once drawn in by his scheme, they relied upon it to their detriment.

Justifiable reliance is a minimal, subjective standard that encompasses "a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Field v. Mans, 516 U.S. 59, 71, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). While justifiable reliance does not obligate a creditor to investigate everything a debtor says, the creditor may not "blindly" rely upon a misrepresentation which could have been proven false through a "cursory examination or investigation." Id. If the surrounding circumstances raise red flags, or if the creditor's own capacity and knowledge would justify further investigation, a duty to investigate may arise. Id. at 72. For example, in Andresen & Arronte, PLLC v. Hill (In re Hill), 425 B.R. 766, 777 (Bankr. W.D.N.C. 2010), the court rejected a law firm's argument that it justifiably relied upon the debtor's promises of payment because it was a sophisticated party who proceeded with its representation of the debtor despite "obvious warning flags." Here, the plaintiffs acted swiftly to terminate Organic Choice's relationship with Mr. Pawlak and took over operation of the company. Even a cursory investigation in August of 2003 into pending organic suppliers (for example, by way of a simple phone call to Mr. Greenberg) would have revealed the existence of the contract.

More crucial is the question of harm itself. Because of the default, the state court presumed that Mr. Pawlak was guilty of unfair dealing and willful misconduct. It then

found that a performing agreement with Mr. Greenberg would have been worth more than $1 million to Organic Choice. For purposes of summary judgment, this Court must also assume that Mr. Pawlak executed a contract with Mr. Greenberg on behalf of Organic Choice and then hid the agreement during his dispute with the other members of the company. It must also accept the state court's calculations as to the value of a performing agreement. In order to find the debt nondischargeable under § 523(a)(2)(A), however, the Court must consider whether the plaintiffs were actually harmed by the loss of the Greenberg contract. It must forget for the moment that if Mr. Greenberg had performed, Organic Choice would have realized more than $1 million in revenue and ask instead whether Mr. Pawlak's actions robbed the company of the ability to *bind* Mr. Greenberg to the contract.

An agreement is illusory where performance is "conditional on some fact or event that is wholly under the promisor's control and his bringing it about is left wholly to his own will and discretion." Metro. Ventures, LLC v. GEA Assocs., 2006 WI 71, 291 Wis. 2d 393, 717 N.W.2d 58 (2006) (quoting Nodolf v. Nelson, 103 Wis. 2d 656, 660, 309 N.W.2d 397 (Wis. Ct. App. 1981)). When Mr. Greenberg allegedly entered into the August 2003 marketing agreement with Organic Choice, he had not yet obtained his organic certification. Nothing required him to do so. The plaintiffs contend that this fact is simply a condition precedent to enforcement, not an illusory promise. Mr. Pawlak believes that Mr. Greenberg's discretionary power to determine whether to obtain certification renders the contract illusory, and thus unenforceable. The distinction between an illusion and a valid condition is often a narrow one. However, as a fundamental principle of contract law, "[A] contract must be definite and certain as to its

14

basic terms and requirements to be enforceable." <u>Herder Hallmark Consultants, Inc. v. Regnier Consulting Group, Inc.</u>, 2004 WI App 134, ¶ 8, 275 Wis. 2d 349, 354, 685 N.W.2d 564.

In <u>Nodolf</u>, the Wisconsin Supreme Court considered the distinction between a valid condition precedent and an illusory contract in the context of a real estate contract with a financing clause. A contractual provision which makes performance contingent (or subject) to a specific event, such as one party's receipt of sufficient financing to close the transaction, creates a condition precedent. 103 Wis. 2d at 658. Essentially, the condition delays enforceability until the condition has been met. <u>Id</u>. A contract is illusory, however, when one party holds complete authority to determine whether a contract is now binding. In <u>Nodolf</u>, the "subject to financing clause" contained no financing terms whatsoever, and the court observed:

> If the buyer could breathe enforceability into the contract by claiming that the financing condition has been met, the buyer would have an unfettered right to decide whether the condition has been fulfilled. This is true because only the buyer and no court can determine the terms of the financing. That right would render buyer's promise to purchase illusory.

<u>Id.</u> at 659.

Given that Mr. Greenberg could unilaterally decide whether to continue the pursuit of certification, there was no binding obligation on him. He could "breathe enforceability" into the contract by obtaining certification, but he could also abandon the process for any reason if he chose. Organic Choice could not have compelled compliance with the contract. As the court stated in <u>Nodolf</u>, "Unilateral action by one party . . . is usually insufficient to remove uncertainty." <u>Id.</u> Whatever the value of a binding agreement might have been, the Greenberg contract was illusory and

15

unenforceable. In order to succeed under § 523(a)(2)(A), the plaintiffs must demonstrate that they suffered actual damages as a direct and proximate result of the debtor's false representation or fraud. In re Rick, 2011 WL 1321361, at *4 (Bankr. D.N.D. Apr. 6, 2011). They have not done so. It appears that even if Mr. Pawlak did conceal the agreement from Organic Choice and the other members, he obtained nothing by doing so. Further, they suffered no actual loss because the contract was unenforceable.

Next, the Court must also make an independent determination as to whether Mr. Pawlak was acting in a "fiduciary capacity" for purposes of § 523(a)(4). Under that section, a debtor may not discharge debts for "fraud or defalcation in a fiduciary capacity." The section contemplates that the plaintiff must demonstrate the existence of a trust or fiduciary relationship between the parties. Historically, this required evidence of an express, technical, or statutory trust with an explicit declaration of trust, a clearly defined trust *res*, and an intent to create a trust. Basel-Johnson, 366 B.R. at 847. In recent years, courts have also found a fiduciary relationship in instances in which there was "a difference in knowledge or power between fiduciary and principal" that "gives the former a position of ascendancy over the latter." In re Marchiando, 13 F.3d 1111, 1116 (7th Cir. 1994); see also In re Woldman, 92 F.3d 546, 547 (7th Cir. 1996) (the exception to discharge "reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge").

The existence of a "fiduciary relationship" within the meaning of § 523(a)(4) is a matter of federal law. O'Shea v. Frain (In re Frain), 230 F.3d 1014, 1017 (7th Cir. 2000). As the Seventh Circuit has stressed repeatedly, not all persons treated as fiduciaries

16

under state law are considered to act in a "fiduciary capacity" within the meaning of the bankruptcy code. See Follett Higher Educ. Group, Inc. v. Berman (In re Berman), 629 F.3d 761, 767 (7th Cir. 2011); Woldman, 92 F.3d at 547. Instead, a fiduciary relationship only exists for purposes of nondischargeability if it "imposes real duties in advance of the breach." Marchiando, 13 F.3d at 1116. More specifically, such a relationship exists in situations in which "one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals." Id. Fiduciary obligations between equals, such as general partners in a partnership or joint venturers, do not qualify. Woldman, 92 F.3d at 547.

When considering where Mr. Pawlak's obligations to Organic Choice fall on the broad spectrum of fiduciary relationships, the Seventh Circuit's decision in Frain is instructive. In that case, the debtor was the major shareholder and was responsible for the day-to-day business operations of the company. The court noted that although this gave him a "natural" advantage over the other two shareholders, it did not render them incapable of knowing the state of the corporation's finances. A superior knowledge of the daily operations was not sufficient *in itself* to place him in a "position of ascendancy." 230 F.3d at 1017. Instead, what the court determined to be crucial was that "the concentration of power was substantially one-sided." Id. Frain had 50% of the shares, daily control, and a shareholder agreement which provided that all "major decisions," including his possible termination for cause, required the consent of the holders of 75% of the voting shares. As the Seventh Circuit noted, the other shareholders were essentially powerless to limit Frain's control of the company, and a chief operating

17

officer with 50% of the shares "who cannot be removed for cause without his consent possesses a position of considerable ascendancy over the other shareholders." Id. at 1018.

For purposes of summary judgment it is necessary to construe the facts in the light most favorable to the plaintiffs. In this case, Mr. Pawlak had two roles with Organic Choice. As the sole principal of Blue Moon, he was essentially a member of the limited liability company. As the general manager of Organic Choice, he had control over the daily operations of the company. However, as the facts illustrate, neither of these roles created the type of "ascendancy" enjoyed by the defendant in Frain. Mr. Pawlak's Blue Moon entity was one of six members and held no power to block the voting control of the others. His employment contract as the general manager may have given him a "natural advantage" over the others as to the financial condition of Organic Choice, but there is no indication that the same knowledge was somehow unavailable to the other members or that they were incapable of monitoring his performance. Mr. Pawlak's salary was set by the employment agreement at 7% of gross sales. Unlike the situation in Frain, Mr. Pawlak was unable to unilaterally modify the terms of this agreement or set a different salary structure. In fact, when a dispute over salary arose, the other members terminated his employment and essentially removed him from the company.

The balance of power between Mr. Pawlak and the other members of Organic Choice was not tilted significantly in his favor. He did not have the freedom to run the company as he saw fit, and the evidence is that he reported events (such as his contact with Mr. Greenberg) to the other members. Even presuming that he concealed an executed contract from the other members, the Court must consider the relationship as

it stood *prior* to the alleged wrong. Frain, 230 F.3d at 1017. A fiduciary relation only qualifies under § 523(a)(4) if it "imposes real duties in advance of the breach." Marchiando, 13 F.3d at 1116. When considering where a relation falls on the fiduciary spectrum, the focus must be on the substantial imbalance in knowledge or power throughout the relationship, rather than at the moment of the alleged wrong. Woldman, 92 F. 3d at 547.

Under state law, there is no doubt that Mr. Pawlak owed fiduciary duties to Organic Choice, both as a member and as the company's general manager. But in the context of the bankruptcy code, he lacked the sort of "ultimate power" or unequal control required for him to have a "position of ascendancy" under the relevant case law. Mr. Pawlak's role with Organic Choice gave him certain advantages but no particular authority over the plaintiffs. In Frain, the court noted the lack of checks and balances between the parties, and observed that the debtor had "more knowledge, and substantially more power," than the other shareholders. 230 F.3d at 1018. In the present case, the plaintiffs had the authority to review Mr. Pawlak's performance and terminate his employment after the initial 12-month period for any reason. There is no evidence which supports the notion that Mr. Pawlak could unilaterally control the operations of Organic Choice or that the plaintiffs lacked the power to check him if they wished. In fact, the undisputed evidence is to the contrary - they terminated his employment and restructured the company without him. This relationship is closer to that of a joint venture between equals than it is to that of a general partner with significant power over limited partners or a corporate officer and shareholder with ultimate authority over corporate operations.

19

Accordingly, the defendant's motion for summary judgment is granted. The claims under §§ 523(a)(2)(A) and (a)(4) are dismissed.

An order and judgment shall be entered consistent with this decision.

Dated: February 7, 2012

BY THE COURT:

/s/ Thomas S. Utschig
_____
Hon. Thomas S. Utschig
United States Bankruptcy Judge